UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK J. BOOTH, | No. 2:20-cv-1562 DJC AC P |
| Plaintiff, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, seeks relief under 42 U.S.C. § 1983. The case has been referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Plaintiff's second amended complaint ("SAC") is now before the court for screening. ECF No. 19. For the reasons stated below, plaintiff will be given the opportunity to either proceed on the SAC as screened or amend the complaint a final time.

I.  SCREENING REQUIREMENT

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (brackets added); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'" Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (brackets added) (quoting Neitzke, 490

1

U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

////

////

II.   SECOND AMENDED COMPLAINT

Plaintiff names the following defendants: California Governor Gavin Newsom; Mule Creek State Prison ("MCSP") Warden P. Covello; Chief Deputy Warden Holmes; Associate Warden Williams; Facility A Captain Hobbs; Corrections Officer Landreth; Chief Nurse Masbad; and Chief Physician Ball. ECF No. 19 at 1-4.  He alleges that his First and Eighth Amendment rights were violated when defendants (1) failed to protect him from contracting COVID-19 (Claims One and Three); (2) destroyed his property in retaliation for filing grievances (Claim Two); and (3) failed to provide him with kosher meals (Claim Four). Id. at 5-8.

Plaintiff alleges that he contracted COVID-19 as the result of defendants' failure to protect him.  He became very sick and spent two weeks in a great deal of pain.  ECF No. 19 at 5, 7.  Plaintiff lost his voice for several weeks, and he continues to have bad headaches and blurry vision.  Id.  Plaintiff seeks monetary damages and injunctive relief in the form of kosher meals; single cell housing; the removal of timed showers and toilets; the cessation of housing COVID-10 inmates in Building Two; resolution to the overcrowding problem; educational instruction on how COVID-19 spreads; and more sanitary protocols regarding dishware usage.  Id. at 9-10.

III.   DISCUSSION

A. Claims for Which a Response Will Be Required

1. Claims One and Three:  Failure to Protect Health and Safety

a. Overview of the Claim

Although plaintiff identifies Claim One as involving basic necessities and Claim Three as involving a threat to safety, both of these Eighth Amendment claims turn on defendants' allegedly inadequate responses to COVID-19.  ECF No. 19 at 5, 7.  Accordingly, they are both construed as claims of deliberate indifference to inmate health and safety, and are considered together here. Claim One alleges that defendants Covello, Holmes, Williams, Hobbs, Ball, and Masbad generally failed to protect plaintiff from COVID and "encouraged all inmates to get COVID-19." Id. at 5.  Claim Three alleges specifically that Covello, Holmes, Hobbs, and Ball knew that Building Two was unsafe to house COVID-19 inmates because the air vents in the building had no barriers to prevent the spread of the virus from cell to cell.  Id. at 7.  The SAC's omnibus

statement of facts recites a history of MCSP's COVID-related precautions, policies, and related inmate concerns and complaints from the outset of the pandemic through the filing of the complaint, which support plaintiff's general allegation that all defendants were aware of the dangers of COVID, its means of transmission, and what was required to prevent its spread. See id. at 12-16. The SAC alleges that plaintiff contracted COVID because of defendants' failure to act, and suffers from chronic health problems as a consequence. Id.

                b.   Applicable Law

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates. Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). "[A] claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994); see Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1076 (9th Cir. 2013) (objective prong of deliberate indifference may be satisfied by inmate demonstrating he was exposed to substantial risk of some range of serious harm; the harm actually suffered need not have been the most likely result among range of outcomes). Actual knowledge of substantial risk of serious harm can be established by showing that the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Farmer, 511 U.S. at 842-48 (internal quotation marks omitted).

Whether the substantial risk of harm comes from a single source or from multiple sources does not matter. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Farmer, 511 U.S. at 843.

                c.   Discussion

Plaintiff's allegations adequately demonstrate that the named defendants were aware of a substantial risk of harm to plaintiff and other inmates from a life-threatening and highly contagious disease during the relevant period. Despite the known risks, defendants failed to

implement single cell occupancy, provide clean and effective masks, assess the ventilation system in Building Two before housing sick inmates there, and isolate sick inmates. Defendants' testing policies and work protocols for staff were also inadequate to protect inmates from infection. ECF No. 19 at 22-24 and passim. Plaintiff identifies specific actions taken by the defendants individually which, drawing all inferences in plaintiff's favor, plausibly reflect deliberate indifference to inmate safety in light of the pandemic conditions. Specifically, the SAC alleges as follows:

<u>Warden Covello and Chief Deputy Warden Holmes</u>: When the outbreak began at MCSP, defendants Covello and Holmes "stacked inmates" – hundreds of whom were sick – in a gym on bunk beds, instead of building tents for them. ECF No. 19 at 27. Inmates who were sick were throwing up on or around each other. <u>Id.</u> Covello and Holmes permitted staff to work in facilities where individuals had contracted COVID-19 and then turn around and work in facilities with individuals who had not contracted it. ECF No. 19 at 23. This foreseeably contributed to the spread of the virus in different facilities. <u>Id.</u> In December 2020, plaintiff filed a grievance stating that defendant Covello was attempting to create herd immunity by moving inmates to Building Two and placing them with another inmate so they could contract COVID-19. <u>Id.</u> at 21. Although face masks and face shields were distributed to the prisons, the Warden and Chief Deputy Warden failed to ensure that staff wore masks, and they ignored reports that inmates were being given dirty masks that they did not wear. <u>Id.</u> at 22-25. Staff and inmate testing protocols were also defective. <u>Id.</u> It is reasonable to assume for screening purposes that such matters were the responsibility of the Warden and Chief Deputy Warden.

<u>Captain Hobbs and Dr. Ball</u>: August 2020, after Building Two had been designated to house quarantined COVID-19 inmates, defendant Hobbs allowed inmates who were assigned to work in Building Two to continue to do so, despite the increased risk of spreading the virus to Facility A, which had no COVID-19 cases at that time, and despite the fact that the Inmate Advisory Council ("IAC")[1] had expressed concerns about the decision. ECF No. 19 at 14. That

---

[1] Plaintiff was the chair of the IAC at that time. See ECF No. 19 at 22. He states that the IAC (continued…)

5

same month, when the IAC put defendant Ball on notice that nurse employees were disposing of their masks and other personal protective equipment in the trash and without regard to inmate workers, defendant Ball responded that the risk of contracting the virus because of those actions was minimal.  Id. at 15.  Plaintiff also alleges that defendant Hobbs did nothing after plaintiff told him that inmates were not receiving disinfectant or days to clean their cells as they had been promised.  Id. at 25.

Chief Nurse Masbad:  Defendant Masbad enforced a policy requiring inmates to use "nonreusable" cups that had been placed in a day room and were accessible to the random handling, coughing, and sneezing of other inmates.  ECF No. 19 at 27.  In February 2021, defendant Masbad sent an e-mail to nurses in Building Five to make certain the policy was being enforced.  Id.

For purposes of screening, the court concludes that plaintiff has adequately pled an Eighth Amendment claim against defendants Covello, Holmes, Hobbs, Ball, and Masbad.

    2.   Claim Two:  Retaliation

        a.   Relevant Allegations

In Claim Two, plaintiff asserts that defendant Landreth retaliated against plaintiff for using the inmate appeals process and the courts.  ECF No. 19 at 6.  On August 18, 2020, after plaintiff had been active for some time in seeking improved institutional response to the COVID pandemic, Landreth poured water into plaintiff's typewriter and ripped up some of plaintiff's books and papers.  During this incident, "Landreth made it clear that the next time that plaintiff told on [officers] for not wearing their masks… things were going to get really bad for plaintiff."  Id. at 17.  Plaintiff complained about this retaliation and continued his IAC advocacy.  On October 13, 2020, Landreth again destroyed plaintiff's cell and took allowable property.  ECF No. 20.  Landreth specifically told plaintiff that "if he 602ed him he would 'Fuck [plaintiff] up.'"  Id. at 6; see also id. at 20.  Landreth also told plaintiff, "If you file a fuckin lawsuit on me, you

---

"is a lawful council that meets with administration to voice inmate concerns.  And [sic] to voice administration concerns to the inmate population."  Id. at 11 (brackets added).

[ain't] seen shit," indicating that plaintiff would get hurt if he filed another grievance against Landreth. Id. at 27.

### b. Applicable Law

Inmates have a First Amendment right to file grievances, and any retaliatory punishment against them for doing so is constitutionally prohibited. See Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted). To state a viable First Amendment retaliation claim, a prisoner must allege that (1) a state actor took some adverse action against him (2) because of (3) that prisoner'' protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes, 408 F.3d at 567-68. Plaintiff must show that the defendant was aware of plaintiff's prior protected conduct and that the protected conduct was "the 'substantial' or 'motivating' factor" behind the defendant's alleged misconduct. Brodheim, 584 F.3d at 1271.

### c. Discussion

Plaintiff's allegations against Landreth are adequate to state a claim for retaliation against him.

## B. Failure to State a Claim

### 1. Defendant Gavin Newsom

Although plaintiff identifies Governor Newsom as a defendant (ECF No. 19 at 1, 3), none of the specific claims for relief name him or present any factual allegations regarding his personal involvement in the specific constitutional violations asserted. See id. at 1-10. Although the governor's response to the pandemic is referenced in the attachment to the SAC (see, e.g., id. at 12, 22, 26, 28), these allegations are not linked causally to the actions giving rise to the specified claims. Because plaintiff's allegations against Governor Newsom do not plausibly support a conclusion that he caused the alleged violations of plaintiff's rights, the court finds that the SAC states no claims against him.

////

////

### 2. Defendant Williams

Associate Warden Williams is named in Claim One, but the complaint does not contain any allegations showing that this defendant acted with deliberate indifference to inmate safety. The SAC fails to identify any specific action that Williams took which was a cause of the preventable spread of COVID-19 at MCSP. Accordingly, no claim is stated against Williams.

### 2. Claim Four: Free Exercise of Religion

Claim Four alleges that Warden Covello deprived plaintiff, who is Jewish, of Kosher meals in violation of his right to freedom of religion. ECF No. 19 at 8. The SAC includes no details regarding MCSP's religious meals program, the history (if any) of plaintiff's participation in it, or the circumstances of his exclusion from it.

The right to exercise religious practices and beliefs does not terminate at the prison door. O'Lone v. Shabazz, 482 U.S. 342 (1987). "Inmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) (citing Kahane v. Carlson, 527 F.2d 492, 495 (2d Cir. 1975). To establish a free exercise violation, plaintiff must show defendants burdened the practice of his religion, without justification reasonably related to legitimate penological interests, by preventing him from engaging in conduct that is (1) based on a "sincerely held" religious concern and (2) "rooted in religious belief" rather than in secular philosophical concerns. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994)).

Plaintiff's allegations are insufficient to state a free exercise claim based on the denial of religious meals. The SAC does not specify who is depriving plaintiff of Kosher meals, and section 1983 establishes liability only for those who cause violations of a plaintiff's constitutional rights. 42 U.S.C. § 1983. The allegation that Warden Covello is *aware* that plaintiff is "not allowed to eat Kosher," ECF No. 19 at 8, does not make him potentially liable for any First Amendment violation. No proper defendant is identified on this claim, and the allegations are too conclusory to make out a constitutional violation.

To the extent plaintiff alleges that he is being denied Kosher meals in retaliation for his

COVID advocacy and/or for bringing this lawsuit (see id. at 25), such motivation might indicate the absence of a penological justification for the denial. However, no facts have been alleged to show that whoever denied plaintiff's request for Kosher meals did so for an improper purpose. Accordingly, neither a free exercise claim nor a retaliation claim has been stated.

## IV. OPTIONAL LEAVE TO AMEND

For the reasons set forth above, the court finds that the SAC states the following claims for relief, which are suitable for service: (1) Eighth Amendment failure to protect inmate health and safety (Claims One and Three) against defendants Covello, Holmes, Hobbs, Ball, and Masbad; and (2) First Amendment retaliation against defendant Ladreth. The court further finds that the SAC does not state a free exercise of religion claim, or any cognizable claims against defendants Newsom or Williams. It is possible that plaintiff may be able to remedy the defective claims, at least in part. Accordingly, he will be provided a final opportunity to amend the complaint if he so desires.

Plaintiff may *either* (1) proceed forthwith to serve defendants Covello, Holmes, Ball, Masbad, Hobbs, and Landreth on the claims identified above, *or* (2) he may delay serving any defendant and amend the complaint.

Plaintiff will be required to complete and return the attached notice advising the court how he wishes to proceed. If plaintiff chooses to amend the complaint, he will be given thirty days to file a third amended complaint. If plaintiff elects to proceed on his claims against defendants Covello, Holmes, Ball, Masbad, Hobbs, and Landreth without amending the complaint, the court will proceed to serve the complaint. A decision to go forward without amending the complaint will be considered a voluntarily dismissal without prejudice of all other claims and defendants.

If plaintiff chooses to file a third amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must allege in specific terms how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy,

588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey, 673 F.2d at 268 (citations omitted).

The federal rules contemplate brevity.  See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002).   Claims must be set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  Each claim must identify the defendants against which it is brought; individuals against whom no claim is brought should not be named as defendants.  The facts intended to support each claim should be set forth under the heading of that claim and should be limited to the facts that are alleged to give rise to liability.  There is no need for an omnibus "Statement of Background Facts," and plaintiff is cautioned that his detailed narratives defeat the purpose of stating a claim.  See McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) (complaints should not contain preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like).   The court should be able to read and understand plaintiff's pleading within minutes. Id. at 1177.

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his first amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (claims dismissed with prejudice and without leave to amend do not have to be re-pled in subsequent amended complaint to preserve appeal).  Once plaintiff files a third amended complaint, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

V.    PLAIN LANGUAGE SUMMARY OF THIS ORDER FOR A PRO SE LITIGANT

You have stated viable claims for relief against defendants Covello, Holmes, Ball, Hobbs and Masbad for deliberate indifference to COVID-19 risks, and against defendant Landreth for

retaliation. You have not, however, presented facts that support a First Amendment claim for the denial of Kosher meals, or any claims against defendants Williams and Newsom.

You have a choice to make. You may drop the claims and defendants found unsuitable for service, and have the complaint served on Covello, Holmes, Ball, Masbad, Hobbs, and Landreth right away. In the alternative, you may file a third amended complaint that tries to fix the problems with the defective claims. Whatever you decide to do, you must complete and return the attached Notice on How to Proceed form in order to let the court know your decision, and you must do so within fourteen days.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall send plaintiff a copy of this district's Civil Rights Complaint By a Prisoner form.

2. Plaintiff's second amended complaint states the following claims against the following defendants:

   a. Eighth Amendment failure to protect (deliberate indifference to inmate health and safety) claims against defendants Covello, Holmes, Ball, Masbad, and Hobbs;

   b. First Amendment retaliation against defendant Landreth.

3. Within **fourteen** days from the date of this order, plaintiff must return the attached Notice on How to Proceed form indicating whether he wishes to proceed on the second amended complaint as screened herein, or if he wishes to amend the complaint.

4. If plaintiff chooses to amend the complaint, he will have **thirty** days from the date of this order to file an amended complaint. This will be plaintiff's **final** opportunity to amend the complaint.

Plaintiff is cautioned that failure to comply with this order within the periods allotted may result in a recommendation that this matter be dismissed.

DATED: June 27, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK J. BOOTH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GAVIN NEWSOM, et al.,<br><br>　　　　Defendants. | No. 2:20-cv-1562 DJC AC P<br><br>PLAINTIFF'S NOTICE ON HOW TO PROCEED |

　　CHECK ONE:

_____  Plaintiff would like to proceed immediately on his First and Eighth Amendment claims against defendants Covello, Holmes, Ball, Masbad, Hobbs, and Landreth as construed by the court.  Plaintiff understands that by choosing to go forward without amending the complaint, he is voluntarily dismissing his religious meals claim and all claims against defendants Newsom and Williams pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

_____  Plaintiff would like to amend the complaint.

DATED: _____

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　PATRICK J. BOOTH
　　　　　　　　　　　　　　　　　　　　Plaintiff Pro Se